UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


BARBARA J. GORDON                                    CIVIL ACTION


v.                                                   NO. 16-16540


JOEL JAMES, RN, ET AL.                               SECTION "F"


ORDER AND REASONS


Before the Court are 10 motions to dismiss by 24 defendants, as well as the plaintiff's motion to amend her complaint to substitute a defendant:

(1)     Dr. Mercadel's motion to dismiss;
(2)     a motion to dismiss pursuant to Rule 12(b)(6) and Rule 9(b), or in the alternative, motion for more definite statement by Joel James, Lynn Strain, Tania Loumiet, Gilbert Ganucheau, Donald Kearns, and Bill Davis;
(3)     a motion to dismiss filed on behalf of defendants Lois Simpson, Susan Myers, Miranda Tait, and Jeanne Abadie;
(4)     Jennifer Bennett McNease's motion to dismiss;
(5)     Wade Shows's motion to dismiss or for more definite statement;
(6)     Maggie McWilliams's motion to dismiss;
(7)     a motion to dismiss by Kevin Brumley, Rickie Callegan, Nancy Davis, Robin Huet, Karen Lyon, Donald McCall, and Barbara Morvant;
(8)     Mary Thibodeaux's motion to dismiss;
(9)     Julie Tizzard's motion to dismiss;
(10)    Demetrius Porche's motion to dismiss; and
(11)    Barbara Gordon's motion to add defendant.


1

For the reasons that follow, the defendants' motions are GRANTED, and the plaintiff's motion to amend is DENIED.

## Background

This civil rights lawsuit arises from a violent encounter between nurses and a patient in the emergency room at Slidell Memorial Hospital, which culminated in an allegedly wrongful battery conviction for the patient.

Barbara J. Gordon, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit against 27 defendants, whom she identifies by name and categorizes as employees of Slidell Memorial Hospital, employees or members of the Louisiana State Board of Nursing, employees or attorneys of the Advocacy Center, her retained criminal defense attorney, and employees of the Louisiana Board of Hospitals (presumably intended as Louisiana Department of Health and Hospitals). Ms. Gordon alleges that, while she was a patient in the emergency room at Slidell Memorial Hospital in 2009, Registered Nurses Joel James and Mary Thibodeaux violently assaulted her.[1] As a result of that violent encounter, Ms. Gordon

---

[1] Ms. Gordon alleges that this was her fifth visit to the emergency room in four weeks, but her "first psychiatric visit." She believes it was her psychiatric diagnosis that caused Mr. James to restrain her. "Joel James stripped my clothes of [sic], broke my

alleges that false accusations were made against her, culminating in a "wrongful [battery] conviction based on the perjured testimony of my accusers." She alleges that she filed complaints against the hospital and its employees, but that the investigation was mishandled when "substantive evidence was withheld by Slidell Memorial Hospital employees and the Advocacy Center employees who investigated my complaints." Ms. Gordon alleges that she discovered new evidence in 2015, which led to a second investigation by the Louisiana State Board of Nursing, but that employees of Slidell Memorial Hospital continued to make false allegations, ultimately denying her right to a fair investigation. Ms. Gordon claims that her federal civil rights have been violated, including her right to due process and equal protection under the Fifth and Fourteenth Amendments;[2] she also advances state law defamation claims. As a result of the defendants' actions, Ms. Gordon alleges that she developed post-traumatic stress disorder and that she has been unable to work for the past eight years.[3]

---

[3] right thumb, and stuffed a wad of cotton balls in my mouth to stop me from screaming as I was being inappropriately restrained."

[2] Ms. Gordon alleges that the defendants "have violated my right to due process, 2nd to the 5th and 14th Amendment of the Constitution."

[3] Ms. Gordon is a registered nurse, but she alleges that she was told to place her license on inactive status and that her request for reinstatement was denied.

Ms. Gordon lists 27 defendants: Joel James, Mary Thibodeaux, Jennifer Bennett, Amanda Scruggs, Lynn Strain, Tonya Loumiet, Barbara Morvant, Karen Lyon, Nancy Davis, Rickie Callegan, Donald McCall, Robin Huet, Demetrius Porche, Maggie McWilliams, Dr. Robert Mercadel, Dr. Kevin Brumley, Gilbert Ganucheau, Donald Kearns, Bill Davis, Wade Shows, Lois Simpson, Susan Meyers, Miranda Tait, Jeanne Abadie, Julie Tizzard, David Aden, and Cecile Costello. Because service was not effected as to Amanda Scruggs, David Aden, and Cecile Costello, the complaint was dismissed without prejudice as to them. By 10 motions, the remaining 24 defendants seek to dismiss the claims asserted against them, and the plaintiff seeks to amend her complaint to add a defendant to replace Mr. Wade Shows, who recently died.[4]

I.

A.

When a plaintiff proceeds *in forma pauperis*, the Court "shall dismiss the case at any time if the court determines that...the action... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28

---

[4] Counsel for Wade Shows filed a statement notifying the Court and the parties that Mr. Shows recently died.

U.S.C. § 1915(e)(2)(B). Each of the defendants challenges the sufficiency of Ms. Gordon's allegations on each of these grounds.

*B.*

The subject matter jurisdiction of federal courts is limited. Kokkonen v. Guardina Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," the Supreme Court has observed, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. King v. U.S. Dep't of Veterans Affairs, 728 F.3d 410, 416 (5th Cir. 2013); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

*C.*

In addition to the jurisdictional challenge, the defendants also seek dismissal of the plaintiff's claims for failure to state a claim under Rule 12(b)(6). The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678). Although "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers...conclusory allegations or legal conclusions masquerading as facts will not suffice" to withstand a motion to dismiss. Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002)(citations omitted).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption

7

that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Ms. Gordon bring this civil rights action under 42 U.S.C. § 1983 for alleged violations of her constitutional rights. She alleges that in 2009 she was mistreated by two nurses and that the hospitals and state agencies mishandled the investigation launched as a result of her complaints regarding the 2009 emergency room episode. It is Ms. Gordon's belief that the nurses battered her and should have been professionally disciplined or criminally charged and convicted. She alleges that she was falsely accused and wrongfully convicted of a crime that has perhaps ended her career as a nurse. The defendants advance a litany of challenges to the sufficiency of the plaintiff's allegations in her complaint: some defendants invoke absolute immunity or qualified immunity from suit; some defendants contend that the plaintiff's claims are barred by Heck v. Humphrey or Parratt-Hudson or Rooker-Feldman, or that service of process was insufficient, that the claims are prescribed, that the claims are premature, or that the allegations are too vague, insufficiently particular, or frivolous.

*A.*

Section 1983, which was enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law.

Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). It creates a private right of action for violations of federally-secured rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...shall be liable to the party injured....

42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must satisfy three elements:

> (1) deprivation of a right secured by the U.S. Constitution or federal law;
>
> (2) that occurred under color of state law, and
>
> (3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citation omitted).

*B.*

As the text of the statute clearly indicates, Section 1983 only provides a remedy against a "person." Neither a state nor officials of the state acting in their official capacities are "persons" within the meaning of Section 1983. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). This is so because a

10

suit against a state official acting in his or her official capacity is no different than a suit against the state. Id. (declining to adopt a reading of Section 1983 that disregards the scope of Eleventh Amendment immunity). All monetary claims against defendants that are state agencies or individual state agents acting in their official capacities must be dismissed.

C.

In Heck v. Humphrey, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). This procedural bar applies even if the § 1983 plaintiff "is no longer in custody and thus cannot file a habeas petition." Randell v. Johnson, 227 F.3d 300 (5th Cir. 2000). The Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence; if it would, the complaint must be

11

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487.

*D.*

When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity. Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam). Once the defense of qualified immunity is "properly raised," the burden of negating the defense shifts to the plaintiff. See Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009)(citation omitted); Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)("To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'"); see also Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997)("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.").

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless

the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)(citations omitted); see also Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001)("even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to

immunity")(citation omitted); see also Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995)(observing that "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law.").

Put simply, a public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the official's conduct violates a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. al-Kidd, 563 U.S. at 735 (citation omitted).[5] Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." See al-Kidd, 563 U.S. at 735

---

[5] In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991) and confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(holding that the sequence identified in Saucier is not mandatory; courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first).

14

("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"); see also Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); see also Camreta v. Greene, 563 U.S. 692, 705 (2011)(observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue")(emphasis in original); see also Pearson, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the Saucier process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

"A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Hanks v. Rogers, 853 F.3d 738, 746-47 (5th Cir. 2017) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017)). "[C]learly established law must be 'particularized' to the facts of the case [and] should not be defined 'at a high level of generality.'" Id. (citations omitted). "In other words," the Fifth Circuit recently explained, "outside of an obvious case, the law is only clearly established if a prior

case exists where an officer acting under similar circumstances ...was held to have violated the Fourth Amendment." Id. (citation and internal quotation omitted).

*E.*

Section 1983 does not contain an independent statute of limitations. Instead, the statute borrows the statute of limitations period for tort actions in the forum state. Owens v. Okure, 488 U.S. 235, 250 (1989); King-White v. Humble Indep. Sch. Dist., 803 F.3d 754, 759 (5th Cir. 2015). In Louisiana, there is a one-year prescriptive period applicable to tort lawsuits. La. Civ. Code art. 3492. Accordingly, Section 1983 claims pending in federal courts in Louisiana are subject to a one year statute of limitations period. Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989).

The one year prescriptive period commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. Similarly, the prescriptive period for claims of medical malpractice in Louisiana is "one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act...." La.R.S. 9:5628. When a plaintiff's complaint is prescribed on its face, the plaintiff must demonstrate suspension or interruption of prescription. Lima

v. Schmidt, 595 So.2d 624, 628 (La. 1992), superseded by statute on other grounds.

## III.

The Court construes liberally the plaintiff's complaint and her response papers.  The thrust of the plaintiff's complaint is her belief that she was wrongfully convicted in state court of battery based on perjured testimony by nurses that battered her in the emergency room in 2009.  She also believes that the proper agencies failed to investigate her complaints regarding her belief that she was assaulted in the emergency room and that, as a result of her wrongful conviction and the botched investigation, her nursing license cannot be reinstated.  She believes that the nurses that battered her in the emergency room should be criminally charged and convicted or at least disciplined for their misconduct. But, instead, she continues to suffer the consequences of a wrongful battery conviction.  Based on the legal principles outlined above, for several independent reasons, her claims must be dismissed.[6]

---

[6] The Court notes that Ms. Gordon singles out very few of the 24 remaining defendants in her factual allegations in her complaint. She fails to identify or attribute any particular wrongdoing to any of them, except the nurses that she says assaulted her in the emergency room in 2009.  And in her opposition papers, Ms. Gordon admits that many of the defendants were named simply because they

Ms. Gordon names as defendants various officials of the State of Louisiana in their official capacity, including members of the Louisiana State Board of Nursing: Donald McCall, Rickie Callegan, Nancy Davis, Robin Huet, Karen Lyon, Barbara Morvant, Kevin Brumley, Demetrius Porche, and Wade Shows, as well as a member of the Louisiana Board of Hospitals (presumably, Louisiana Department of Health and Hospitals), Ms. Maggie McWilliams.

As to the LSBN and DHH, Ms. Gordon alleges:

> In 2009, substantive evidence was withheld by Slidell Memorial Hospital employees and the Advocacy Center employees who investigated my complaints.... [I]n 2015, evidence was discovered..., which fractured the accusations made by the two RNs, and allowed the [Louisiana Department of Health and Hospitals and the Louisiana State Board of Nursing] the opportunity to conduct a second investigation. These agencies didn't conduct an appropriate investigation in 2009. There were falsified statements made by the LSBN investigator. In 2015, both the LSBN and the AC tried to deny me this second investigation, because to do so, would have resulted in liability and embarrassment, due to the

---

were involved in some way, or that she had some contact with them over the years while she was trying to ensure that an investigation into the nurses' conduct was being conducted. For the most part, Ms. Gordon fails to attribute any particular wrongdoing to any particular defendant. Instead, she seems aggrieved by her circumstances more generally and her belief that she was mistreated not only in 2009 but also during the course of the investigations and that the mistreatment stems in part from her psychiatric diagnosis. She also believes that it is unfair that her RN license is suspended while the nurses that she believes battered her in 2009 remain active and are victimizing other patients.

mistakes made in 2009 by the individual employees whose
mistakes resulted in my wrongful conviction. Attempts
have been made by LSBN staff to alter evidence, in an
effort to protect its employees.

...

The [LSBN investigator] Donald McCall, RN, and the other
individual employees affiliated with the LSBN have
"under color of state law" refused to adhere to the
recommendations of the [Louisiana Department of Health
and Hospitals] to criminally investigate these two RNs.
Mr. McCall failed to identify even one violation, of the
numerous violations, of the LA Nurse Practice Act.

...

I developed PTSD and was treated in 2011. I'd been asked
to place my RN license on inactive status when I reported
my abuse to Mr. Rickie Callegan, RN, on 2/2/2009. I
haven't worked in almost eight years. In 2012, when I
applied for reinstatement, it was denied. I've been
called a "criminal" and a "liar" by the LSBN and the
AC.... The LSBN, nor the AC have yet conducted
appropriate investigations.

Additionally, in her papers opposing the defendants' motions to
dismiss, Ms. Gordon suggests that each defendant had the obligation
to participate in an unbiased investigation conducted by Donald
McCall, RN, the investigator employed by LSBN, who was assigned to
investigate Joel James and Mary Thibodeaux in August 2015. She
concludes that, "since there have been no legal or professional
consequences for even one defendant, it defies common sense to
suggest that a proper investigation was conducted in 2015."[7]

_____

[7] In her opposition papers, Ms. Gordon alleges additional
conclusions as well as additional facts, but her allegations fail

19

Insofar as Ms. Gordon seeks to recover against officials of the Louisiana State Board of Nursing or the Louisiana Department of Health and Hospitals, her claims must be dismissed because they are not "persons" within the meaning of Section 1983; the claims against these defendants in their official capacities are barred by Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989)(neither a State nor its officials acting in their official capacities are "persons" under Section 1983). Thus, the Section 1983 claims against Donald McCall, Rickie Callegan, Nancy Davis,

---

to overcome the legal principle that officials of the state are not "persons" under Section 1983. Ms. Gordon alleges:

> These individual employees of the Louisiana State Board of Nursing have knowingly and actively participated in an effort to deny my right to due process for a second time. They accomplished that by refusing since May of 2014, when plaintiff attended a hearing for reinstatement at the Board office in Baton Rouge, LA, to refuse to address the false charges documented in the Board Book.... In 2016, a reinstatement packet sent to me by the LSBN contained altered documents, indicating that there was an attempt to change facts and dates previously documented in the legal records of the LSBN.... From 2012, when plaintiff applied for reinstatement of my RN license, which I'd been inappropriately asked to place on an inactive status in 2009, plaintiff questioned the mistakes made and requested that the LSBN determine what went wrong. Apparently, the LSBN doesn't think that their decisions must be supported by principles, rationales or substantive evidence.

Robin Huet, Karen Lyon, Barbara Morvant, Kevin Brumley, Demetrius Porche, and Maggie McWilliams must be dismissed.[8]

Mr. Wade Shows was not employed by the LSBN, but it is represented that he served as its attorney and represented the Board, including by prosecuting disciplinary actions against registered nurses. Mr. Shows apparently served as prosecuting attorney in the LSBN's administrative hearing that involved Ms. Gordon's RN license. Mr. Shows requests dismissal of the plaintiff's claims on the grounds of absolute immunity, qualified

---

[8] The Court observes that Ms. Gordon makes no specific allegations in her complaint against Davis, Huet, Lyon, Morvant, Brumley, or McWilliams. The only allegation singling out Callegan in the complaint is that Ms. Gordon alleges that she reported her abuse to him on February 2, 2009. Nothing more. The Court additionally observes that, in Ms. Gordon's opposition papers, she states that she is "not seeking damages from Ms. McWilliams or Ms. Davis." Rather, she says "[t]he purpose of including them in this suit is to acknowledge that had the violation of rights by those staff members and the complete disregard and failure of Slidell Memorial Hospital to initiate state and federal laws, been addressed in 2009, neither the staff nor the hospital could have circumvented the law to avoid legal and financial consequences." Ms. Gordon admits that Ms. McWilliams and Ms. Costello were included as defendants "because early in 2015, plaintiff contacted Ms. McWilliams and Ms. Costello to request their intervention on my behalf. The process of proving and supporting my claims would have been easier." As for Morvant and Dr. Lyon, "Ms. Morvant was the administrator of LSBN during the first five years of this travesty...[h]er job description renders her responsible for the actions of staff members as does Dr. Lyons." Insofar as Ms. Gordon admits in her opposition papers that she has no viable claim against certain defendants, the Court admonishes her for asserting frivolous claims.

immunity, and statutory immunity. Insofar as Wade Shows served as prosecuting attorney in the LSBN's administrative hearing that involved Ms. Gordon's RN license, Mr. Shows is absolutely immune from Ms. Gordon's lawsuit against him in his individual capacity for actions related to his representation of the LSBN. The doctrine of absolute prosecutorial immunity applies to agency officials acting in administrative adjudications. Butz v. Economou, 438 U.S. 478 (1978). Thus, agency officials performing certain functions analogous to those of a prosecutor, like Mr. Shows, may invoke absolute immunity with respect to such acts. Prosecutorial immunity extends to Section 1983 claims. See Imbler v. Pachtman, 424 U.S. 409, 416 (1976). The absolute immunity recognizes in Butz has been extended to members of administrative boards that regulate attorneys. See Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 757 F.2d 676, 689 (5th Cir. 1985).

Even if Mr. Shows was not entitled to absolute immunity from Ms. Gordon's claims against him, Mr. Shows would be entitled to statutory immunity, which extends to him as an agent or representative of LSBN. La.R.S. 37:931(B):

> There shall be no liability on the part of and no action for damages against any member of the board, its officers, employees, agents, or representatives for any action undertaken or performed by such individual within

22

the scope of the duties, powers, and functions of the
board while acting without malice and in the reasonable
belief that the action is taken within the board's and
such individual's authority.

Mr. Shows is entitled to statutory civil immunity as an agent or

representative of the LSBN. Ms. Gordon does not allege that Mr.

Shows or Carrie LeBlanc Jones, the defendant she seeks to

substitute for him, acted with malice or outside the scope of any

statutorily authorized duties and powers in the legal

representation of the LSBN.[9] Accordingly, statutory civil immunity

is also implicated.

Ms. Gordon does not allege that Mr. Shows acted with malice

or outside the scope of his statutory duties in his legal

representation of LSBN. Likewise, in her motion to substitute Ms.

Jones for Mr. Shows, Ms. Gordon simply suggests that Ms. Jones

"was a contract attorney for the Board of Nursing, as was Mr.

Shows," and that Ms. Jones "has knowledge and awareness of Mr.

Shows advice to the Nursing Board to ignore the plaintiff's

---

[9] Ms. Gordon makes vague and conclusory allegations suggesting that
there were "falsified statements" made by the LSBN investigator
and that the SMH staff participating in the investigation have
made "false, unsubstantiated, allegations which violate my rights"
as well as professional responsibility standards. Any attempt to
assert some sort of fraud claim fails the particularity requirement
of Rule 9(b) of the Federal Rules of Civil Procedure.

23

complaints." Her allegations are insufficient to withstand invocation of absolute or statutory civil immunity principles.

Accordingly, Ms. Gordon's claims against Donald McCall, Rickie Callegan, Nancy Davis, Robin Huet, Karen Lyon, Barbara Morvant, Kevin Brumley, Demetrius Porche, Wade Shows, and Maggie McWilliams must be dismissed on immunity grounds, and her request to add Ms. Jones must be denied.

*B.*

Insofar as Ms. Gordon seeks monetary damages that would call into question the validity of her battery convictions, any such claim is barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

Ms. Gordon alleges in her complaint (and admits in her papers) that she was convicted of battery. Public records of the City Court of Slidell confirm that Ms. Gordon was convicted on three counts of simple battery upon Joel A. James, Mary Thibodeaux, and Amanda Scruggs. There is no suggestion or indication that her convictions have been overturned. In her complaint, Ms. Gordon alleges that it was the nurses that abused her (not the other way around as suggested by her convictions), and that she was wrongfully convicted of battery based on the perjured testimony of Joel James and Mary Thibodeaux and the cover up by other Slidell Memorial Hospital defendants. Insofar as Ms. Gordon seeks Section

24

1983 relief based on these alleged facts, her claims must be dismissed without prejudice as barred by Heck.

C.

It appears that Ms. Gordon's Section 1983 claims against Slidell Memorial Hospital personnel (Joel James, Mary Thibodeaux, Jennifer Bennett McNease, Lynn Strain, Tania Loumiet, Gilbert Ganucheau, Donald Kearns, and Bill Davis) must be dismissed as barred by Heck. This is so insofar as she seeks to establish she was not guilty of battery and that her conviction was based on the perjured testimony of SMH nurses Joel James and Mary Thibodeaux and the cover up of other defendants. Nevertheless, the SMH defendants (none of whom, except for James and Thibodeaux, are specifically referenced in the allegations of her complaint) also move for dismissal on the grounds that they enjoy qualified immunity from suit and because Ms. Gordon's claims are prescribed.

1. Qualified Immunity

Slidell Memorial Hospital is considered a political subdivision of Louisiana. Insofar as the SMH personnel, Joel James, Lynn Strain, Tania Loumiet, Gilbert Ganucheau, Donald Kearns, and Bill Davis, are sued in their individual capacities, they invoke qualified immunity. Ms. Gordon fails to overcome their invocation of qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Administration of medical care is a discretionary function for the purposes of qualified immunity. Sama v. Hannigan, 669 F.3d 585, 591 (5th Cir. 2012). And, any investigation of the incident at the hospital is considered a discretionary act. See Smith v. Patri, 99 Fed. Appx. 497 (5th Cir. 2004)(investigations within an official's authority are discretionary acts).

Ms. Gordon fails to specify how each defendant violated federal law or her constitutional rights. She likewise fails to allege how each SMH defendant's wrongful conduct violated clearly established federal statutory or constitutional law. She fails to allege any facts whatsoever as to a number of defendants. Because Ms. Gordon fails to allege sufficient facts to overcome the defendants' assertion of qualified immunity, her claims against Joel James, Lynn Strain, Tania Loumiet, Gilbert Ganucheau, Donald Kearns, and Bill Davis must be dismissed.

2.  Prescription

Ms. Gordon alleges a Section 1983 claim and tort claims arising from the investigations she requested in 2009 and in 2015. The defendants contend that such claims are prescribed because she did not file her complaint until November 22, 2016.  The Court agrees.

Here, the plaintiff alleges that she was the victim of a crime perpetrated by two nurses at Slidell Memorial Hospital on January 15, 2009.  She reported her alleged abuse on February 2, 2009. She was found guilty of simple battery on October 22, 2009.  The alleged Advocacy Center investigation complained of occurred in 2009.  And another allegedly mishandled investigation occurred in August 2015.  Ms. Gordon knew or should have known of the existence of any claim arising from these facts by the end of 2010, yet she did not file this lawsuit until November 22, 2016.

Any ambiguity Ms. Gordon seeks to create regarding the information she received regarding the 2015 investigation "[i]n 2015-2016" about Slidell Memorial Hospital employees and staff "continu[ing] to make false, unsubstantiated, allegations which violate my rights" falls short of meeting her burden to show that any claims that she may have remaining have not prescribed.  In her opposition papers, Ms. Gordon states that she determined in

2015 that a bona fide investigation had not been conducted in 2009. She says that in January 2015, she told Ms. Meyers (who was assigned to review her file from the LSBN) that she was asking the Advocacy Center to defend her in a lawsuit against SMH and the RNs who assaulted her; she also mentions the Board Book given to her on May 3, 2014 at her reinstatement hearing. She says she contacted the AC and determined in February 2015 that the investigation conducted by the AC was flawed and incomplete. This shows that the plaintiff's claims arising from her alleged battery (if any, considering Heck) became viable in 2009; the first investigation allegedly occurred in 2009; the second investigation allegedly occurred in 2015, but she states that she determined in February 2015 that the AC investigation was flawed and incomplete. She should have known about any claim arising from the mishandled investigation by spring 2010 or, at the latest, by February 2015. Yet, she did not file suit until November 2016. Any claims not foreclosed by immunity or Heck have prescribed.[10]

The Court is not without sympathy for Ms. Gordon's assertions that she had a psychiatric diagnosis in 2009 (although she denies being "psychotic" in 2009 and challenges the hospital personnel

---

[10] This finding of prescription applies equally to the other defendants.

for prescribing her anti-psychotic medications)[11] and that she then developed Post-Traumatic Stress Disorder, but she fails to allege how these medical issues prevented her from asserting her claims. This is so because her own allegations suggest that she had the capacity to and indeed reported her alleged abuse as early as February 2009, that she participated in the investigation of her complaints, and that she discovered evidence bearing on the "deficient" investigation in 2015. Ms. Gordon has not carried her burden to show that the prescriptive period applicable to any claims remaining must be tolled. Any Section 1983 claims that survived the Heck bar and the particular defendants' assertions of immunity and qualified immunity have prescribed.

Accordingly, any Section 1983 claim against Joel James, Mary Thibodeaux, Jennifer Bennett McNease, Lynn Strain, Tania Loumiet, Gilbert Ganucheau, Donald Kearns, and Bill Davis that may have survived Heck must be dismissed because the plaintiff has failed

---

[11] Insofar as the plaintiff alleges negligent medical treatment by a health care provider, any such claims are premature, given that she has not alleged that she has exhausted her claims before a medical review panel as required by La.R.S. 40:1231.8(B)(1)(a)(i)("No action against a health care provider covered by this part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").

to overcome assertions of qualified immunity and because her claims have prescribed.

*D.*

1. The Advocacy Center Defendants

In suing the "employees of the Advocacy Center, New Orleans," Ms. Gordon names as defendants Ms. Lois Simpson, Ms. Susan Meyers, Miranda Tait, and Ms. Jennifer Abadie. Ms. Gordon alleges:

> In 2009, substantive evidence was withheld by Slidell Memorial Hospital employees and the Advocacy Center employees who investigated my complaints.... These agencies didn't conduct an appropriate investigation in 2009.... In 2015, both the LSBN and the AC tried to deny me this second investigation, because to do so, would have resulted in liability and embarrassment, due to the mistakes made in 2009 by the individual employees whose mistakes resulted in my wrongful conviction....
>
> . . .
>
> The employees of the Advocacy Center have, through acts of omission, disavowed my equal protection, provided by the 14th amendment. Ms. Simpson told me this year that my case []didn't afford change for a large population of citizens, and that since it was not a systemic issue, that the AC had the right to ignore my case.
>
> . . .
>
> I've been called a "criminal" and a "liar" by the LSBN and the AC.... The LSBN nor the AC have yet conducted appropriate investigations.

The Advocacy Center defendants submit that dismissal is appropriate because Ms. Gordon makes no specific allegations of

30

wrongdoing as to Ms. Simpson, Ms. Meyers, Ms. Tait, or Ms. Abadie. Furthermore, they submit that Ms. Gordon fails to allege facts that would support a finding that the defendants acted under color of state law. Insofar as any Section 1983 claim is not barred by Heck or otherwise prescribed as summarized above, the Court agrees that Ms. Gordon has failed to allege a plausible claim for Section 1983 relief against the Advocacy Center defendants. Her conclusory and sweeping allegations fail to attribute any Section 1983 liability to any particular Advocacy Center defendant. At most, Ms. Gordon alleges that she is displeased that the Advocacy Center did not advocate for her; she alleges no facts that would suggest wrongdoing on the part of the Advocacy Center. Furthermore, no allegations support a finding that the Advocacy Center is a state agency, or that the current or former employees or attorneys of the Advocacy Center named as defendants are state actors; a mandatory prerequisite for Section 1983 liability to attach. Ms. Gordon's claims against the former and current employees of the Advocacy Center, Ms. Lois Simpson, Ms. Susan Meyers, Ms. Miranda Tait, and Ms. Jennifer Abadie, must be dismissed.

2. Dr. Mercadel

Ms. Gordon alleges that Dr. Mercadel violated her right to equal protection by denying her right to an unbiased investigation.

Ms. Gordon states that Dr. Mercadel was not in the treatment room when she was allegedly violently restrained by James and Thibodeaux, but that on that day in 2009 Dr. Mercadel was supervising the nurses that restrained her and that he participated in the investigation conducted by the ER supervisor in January 2009 and he made statements that supported the accounts told by James and Thibodeaux. Ms. Gordon says she named Dr. Mercadel as a defendant because she "named as defendants each individual who has participated in victimizing me a second time when Mr. McCall did what the LSBN calls an appropriate investigation." Insofar as any claim survives the Heck bar and is not otherwise prescribed, Ms. Gordon alleges nothing more against Dr. Mercadel than that he was the designated supervisor of the nurses she claims assaulted her, and that his statements to investigators did not support the allegations giving rise to her complaints she made to the investigatory board. Ms. Gordon has failed to state a plausible claim for relief against Dr. Mercadel.

   3.   Julie Tizzard

   Ms. Gordon sues her defense attorney, whom she says "apparently believed that plaintiff was guilty, and failed to prepare any type of defense." Ms. Gordon fails to allege that Ms. Tizzard was a state actor. An attorney is not acting under color

of state law when representing a client. <u>Polk Cnty. V. Dodson</u>,

454 U.S. 312, 317-18 (1981). The plaintiff fails to allege any

facts as to Ms. Tizzard and therefore fails to advance allegations

that plausibly suggest entitlement to relief. In her opposition

to the motion to dismiss, Ms. Gordon states that "Ms. Tizzard is

included as a defendant because when one knows that their actions

failed to prevent serious injury to another, that person is morally

and in some cases, financially liable." This is an admission by

Ms. Gordon that her claim against Ms. Tizzard is frivolous. Ms.

Gordon states that Ms. Tizzard failed to investigate her criminal

case, gave bad advice, and that she does not even know if Tizzard

considered that she was innocent. Ms. Gordon's claim against Ms.

Tizzard fails for a number of reasons, including that she is not

a state actor, the claim is barred by <u>Heck</u>,[12] the claim has

prescribed, and the claim is insufficiently pled and implausible.

IV.

In her complaint, Ms. Gordon invokes this Court's

jurisdiction solely on federal question grounds pursuant to 28

U.S.C. § 1331. Her Section 1983 claims -- her only federal claims

-- have been dismissed. Having dismissed all claims over which it

---

[12] Ms. Gordon says she is asking for $1,000 in damages from Tizzard
because that was the fee she paid her in 2009.

has original jurisdiction, insofar as Ms. Gordon asserts state law claims that are not otherwise prescribed, the Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. 28 U.S.C. § 1367(c).[13] Ms. Gordon's state law claims are dismissed without prejudice.

***

The Court is not without sympathy for Ms. Gordon's plight and frustration and her efforts to "pick up the pieces of [her] life." Ms. Gordon's complaint and opposition papers make clear that she vehemently believes that her patient rights were violated in 2009, that she was the one who was battered, and that the nurses that she believes mistreated her then perjured themselves to secure her conviction for battery.[14] She likewise strongly believes that those tasked with investigating the 2009 incident, due to

---

[13] Had the plaintiff sufficiently pled claims arising under Section 1983, the Court would have the discretion to exercise supplemental jurisdiction over her remaining state law claims pursuant to 28 U.S.C. § 1367(a). However, 28 U.S.C. 1367(c)(3) allows a district court to "decline to exercise supplemental jurisdiction over a [state law] claim...if...the district court has dismissed all claims over which it has original jurisdiction."

[14] Ms. Gordon says "[m]y goal since 5/13/2014 has been to prove that my 'caregivers' assaulted me, and then made false accusations to avoid accountability. I was wrongfully convicted based on the perjured testimony of the ER nurses, Mary Thibedeaux and Joel James."

conflicting loyalties or mistakes or accepting the accounts of the nurses involved in the incident over her own account, have failed to vindicate her. She also complains about the bias and prejudice related to her psychiatric diagnosis and about the professional and ethical failings she believes she has observed on the part of the agencies involved in the investigation. These beliefs prompted Ms. Gordon's spirited but misguided effort to vindicate her rights in federal court. She has failed to state a cognizable claim for relief for several independent reasons, however, including by her own admission that she named most of the defendants in this lawsuit simply because they had some tangential involvement, not because they had wronged her in particular; she continues to attempt to prove that she was not guilty of battery in the 2009 incident, but her conviction still stands; most of the events of which she complains took place six years ago or two years ago; and many of the defendants she sued are entitled to immunity or qualified immunity from suit.

Accordingly, IT IS ORDERED: that the defendants' motions to dismiss are hereby GRANTED,[15] and the plaintiff's motion to add a

---

[15] Many of the defendants requested dismissal for improper service of process, but the Court need not reach the service or other grounds advanced.

defendant is hereby DENIED.[16]  The plaintiff's claims are hereby dismissed (insofar as the claims are dismissed as barred by Heck, the dismissal is without prejudice; any state law claims are dismissed without prejudice).

New Orleans, Louisiana, September 26, 2017

_____

for  MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[16] For the same reasons that Ms. Gordon's claims against Mr. Shows must be dismissed, Ms. Gordon's request to amend her complaint to substitute Ms. Carrie LeBlanc Jones for Mr. Shows must be denied. Ms. Gordon seeks to add Ms. LeBlanc as a defendant because she was aware of Mr. Shows' advice to the nursing board to ignore plaintiff's complaints.  Ms. Gordon's claim against Ms. Jones would appear to be the same as that which this Court has already determined cannot withstand an assertion of absolute or statutory civil immunity.  The motion to add Ms. Jones must be denied as futile.